# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

GRUNBERGER JEWELERS, et al.  :
   Plaintiffs,      :
             :
v.             :  Civil Action No. 3:03CV647 (CFD)
             :
THOMAS LEONE,      :
   Defendant.     :

## RULING ON DEFENDANT'S MOTION TO DISMISS

  Plaintiffs Grunberger Jewelers, Inc., James Grunberger, Eric Beaume, and Sonia Lutbert

originally filed this suit in the Connecticut Superior Court against the defendant, Thomas Leone.

Leone subsequently removed the action to federal court based upon diversity jurisdiction.  The

amended complaint contains two counts.  Count one asserts a claim of fraud and count two

asserts a breach of contract claim.

  Pending is Thomas Leone's Motion to Dismiss under Fed.R.Civ.P. 12(b)(2) and (6) [Doc.

#16].  For the following reasons, the motion is GRANTED.

### I.  Background

  The amended complaint makes the following allegations: The plaintiffs–a jewelry firm

and three individuals–entered into a joint venture in January of 2000 to set up precious metals

testing facilities in Mali, West Africa.  On January 13, 2000, Beaume and Lutbert met with

defendant Thomas Leone in Illinois and during the meeting they all spoke with James

Grunberger (who was in Connecticut) by telephone conference call.  The purpose of the meeting

in Illinois and the call to Grunberger was to negotiate the sale of a metals testing machine to the

plaintiffs for use in their joint venture.  Leone was then President of Coating Measurement

Instruments ("CMI"), an Illinois metals testing machine maker.  The meeting was at the offices of CMI.  Leone agreed to sell the plaintiffs a machine for a total purchase price of $22,000, which included installation of the machine in Mali as well as on-site training for the plaintiffs. The plaintiffs paid for the machine on January 13, 2000, the date of the meeting in Illinois.  The machine was shipped to the plaintiffs in Connecticut, but they allege that they were never provided the promised installation or training.  The plaintiffs assert the failure to provide installation and training was fraudulent (count one) and a breach of contract (count two).  Only Leone–not CMI–is a defendant.

Leone's Motion to Dismiss asserts that both counts should be dismissed for failure to state a claim on which relief can be granted pursuant to Fed.R.Civ.P 12(b)(6), and that the fraud count should be dismissed for failure to plead with particularity pursuant to Fed.R.Civ.P 9(b). Leone also asserts that the amended complaint should be dismissed for lack of personal jurisdiction over him, pursuant to Fed.R.Civ.P 12(b)(2).  The Court will first take up Leone's argument regarding personal jurisdiction.

## II.  Analysis

When a defendant challenges personal jurisdiction in a motion to dismiss, the plaintiff bears the burden of proving that the court has jurisdiction over the defendant.  See Amerbelle Corp. v. Hommell, 272 F. Supp. 2d 189, 192 (D. Conn. 2003); see also Metro. Life Ins. v. Robertson-Ceco Corp., 84 F.3d 560, 566-67 (2d Cir. 1996); Ensign-Bickford Co. v. ICI Explosives USA, Inc., 817 F. Supp. 1018, 1026 (D. Conn. 1993).  When no discovery has been conducted, the plaintiff only needs to assert facts constituting a prima facie showing that the defendant's conduct was sufficient for the court to exercise personal jurisdiction.  See Amerbelle,

272 F. Supp. 2d at 192-93 (citations omitted).  The court must resolve all doubts in favor of the plaintiff, regardless of controverting evidence submitted by the defendant.  See United States Surgical Corp. v. Imagyn Med. Tech., Inc., 25 F. Supp. 2d 40, 44 (D. Conn. 1998).

The court has personal jurisdiction if the defendant's conduct satisfies the requirements of (1) the forum state's long-arm statute; and (2) the Due Process Clause of the Fourteenth Amendment.  Ensign-Bickford, 817 F. Supp. at 1026.  In making this determination, the Court may consider affidavits submitted by the parties.  See id. at 1026 ("To survive the motion [to dismiss], the plaintiff must make a 'prima facie showing' through affidavits or other evidence that the defendant's conduct was sufficient for the court to exercise personal jurisdiction.")  See also Homecare Federation, Inc. v. Paragon Scientific Corp., 27 F. Supp. 2d 109, 112 (D. Conn. 1998) ("On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, a plaintiff bears the burden of showing that the court has jurisdiction over a defendant . . .  The use of affidavits and supporting materials from a defendant is likewise proper under this Rule.").

A.  Connecticut Long-Arm Statute

The relevant Connecticut long-arm statute provides, in part, that "a court may exercise personal jurisdiction over any nonresident individual . . . who in person or through an agent: (1) Transacts any business within the state, (2) commits a tortious act within the state . . .  (3) commits a tortious act outside the state causing injury to person or property within the state . . . [or] (4) owns, uses, or possesses any real property situated within the state."  Conn. Gen. Stat. § 52-59(b)(a).

The parties do not appear to dispute that Leone did not "own, use, or possess" any real property situated in Connecticut or that he did not commit a tortious act outside Connecticut that

caused injury to person or property within the state.  However, in their opposition to the motion

to dismiss, the plaintiffs assert that Leone transacted business in Connecticut and also that he

committed a tortious act in Connecticut sufficient to satisfy the long-arm statute.

       1.  Transacting Business in Connecticut

      Resolving all doubts in favor of the plaintiffs for purposes of ruling on the motion to

dismiss, the Court assumes, based on the affidavit of plaintiff James Grunberger, that Leone

made two telephone calls from Illinois to Grunberger in Connecticut during the meeting of

January 13, 2000.  The plaintiffs claim that these phone calls–made from Illinois–constitute

"transacting business" within the meaning of the Connecticut long-arm statute.  Leone claims

that his conduct did not amount to "transacting business," and that the activities of other CMI

representatives–and CMI–cannot be attributed to him for evaluating whether the Connecticut

long-arm statute is satisfied or whether due process was met.

      a.  "Fiduciary Shield" Doctrine

      The parties have cited conflicting authority regarding whether an individual's actions

taken on behalf of a corporation can be a basis for asserting personal jurisdiction over that

individual.  Leone cites decisions from the United States District Court for the District of

Connecticut which he claims hold that personal jurisdiction cannot be asserted over an individual

for action taken in his capacity as an officer or director under the Connecticut long-arm statute.

For example, the District Court, in applying the Connecticut long-arm statute, stated:

> As to [the individual defendant], [the plaintiff] has not made out a prima facie case under
> the transaction of business provision of the long arm statute. "Courts in this district have
> held that personal jurisdiction over a director or officer must be based on conduct apart
> from acts in the director or officer's official capacity." Reese v. Arrow Fin. Servs., LLC,
> 202 F.R.D. 83, 89 (D.Conn.2001); see also Bross Utils. Serv. Corp. v. Aboubshait, 489

F.Supp. 1366, 1373-74 (D.Conn.) (holding that, in connection to the transaction of business provision of the Connecticut long arm statute, there was no personal jurisdiction when "[n]othing in the record indicates that the individual defendants transacted any business other than through the corporations which they controlled"), aff'd, 646 F.2d 559 (2d Cir.1980); Hagar v. Zaidman, 797 F.Supp. 132 (D.Conn.1992). The complaint has not sufficiently set forth that the transaction of business allegedly performed by [the individual defendant] in Connecticut was performed other than through [the individual defendant's corporation]. Therefore, the transaction of business prong of the Connecticut long arm statute does not apply . . .

Jarrow Formulas v. Int'l Nutrition Co., 175 F. Supp. 2d 296, 306 (D. Conn. 2001).[1]  This

approach has been termed the "fiduciary shield doctrine."  See Under Par Associates, L.L.C. v.

Wash Depot A., Inc., 47 Conn. Supp. 319, 325 (Conn. Super. 2001).

However, the "fiduciary shield doctrine" has not been adopted by the Connecticut State

Courts and there is a considerable question as to its justification.  In Under Par, the Connecticut

Superior Court noted that the decisions from the United States District Court for the District of

Connecticut on this issue have been misinterpreted.  Also, "a substantial body of jurisprudence

on the 'fiduciary shield' doctrine exists. . .  [S]quadrons of citations can be mustered in support

of either side of the debate."  Under Par, 47 Conn. Supp. at 325.  After considering the

"doctrine's analytical underpinnings," the Superior Court in Under Par concluded that "[i]n light

of their facts, [the Connecticut District Court cases] stand for a common, unremarkable

proposition.  Where a corporation has not 'transacted business' in Connecticut and an officer of

that corporation has not transacted any business other than through the corporation, the court has

no more jurisdiction over the individual than it does over the corporation."  Id. at 324.

---

[1]The other District Court decisions that are cited in support of the fiduciary shield doctrine are Adams v. Wex, 56 F. Supp. 2d 227 (D. Conn. 1999), Hagar v. Zaidman, 797 F.Supp. 132 (D.Conn.1992), and Bross Utils. Serv. Corp. v. Aboubshait, 489 F.Supp. 1366 (D.Conn. 1980).

The Court agrees with this reasoning of <u>Under Par</u>.  First, the fiduciary shield doctrine has not been adopted by the Connecticut State Courts and the Connecticut District Court opinions have not squarely recognized it either.  "None of the [District Court cases] properly understood, stand for the proposition advanced by [the individual defendant] that the court can have jurisdiction over the corporation but simultaneously lack jurisdiction over the officer solely because he acted in his corporate capacity."[2]  <u>Id.</u> at 325.

The Superior Court was also correct in <u>Under Par</u> in specifically rejecting the "fiduciary shield doctrine" in insulating corporate officers for their own conduct.  The better course is that the contacts with the forum of each defendant–the corporate officer and the corporation– "must be assessed individually," both with regard to the long-arm statute and due process analysis.  <u>See id.</u> at 327.  While the actions of a corporate officer may typically be attributed to the corporation under agency principles for purposes of determining jurisdiction over the corporation, the actions of the corporation (undertaken by other individuals) should not ordinarily be attributed to the individual corporate officer for purposes of determining whether jurisdiction exists over that individual.  At the same time, however, individuals should not be shielded from their own conduct simply because they were acting on behalf of a corporation or other entity.  <u>See</u> <u>Calder v. Jones</u>, 465 U.S. 783, 790 (1984) ("Petitioners are correct that their contacts with [the forum state] are not to be judged according to their employer's activities there.  On the other hand, their status as employees does not somehow insulate them from jurisdiction."); <u>World-Wide Volkswagen Corp. v. Woodson</u>, 444 U.S. 286, 297 (1980) ("[T]he mere 'unilateral activity of those who claim

---

[2]Some language in the decisions, particularly <u>Jarrow</u> and <u>Reese</u>, appear to support the fiduciary shield doctrine.  This Court will not follow that aspect of those opinions.

some relationship with the nonresident defendant cannot satisfy the requirement of contact with the forum state.'") (quoting Hanson v. Denckla, 357 U.S. 235, 253 (1958)).  Here, Thomas Leone is the sole defendant and the Court will assess his personal actions in determining whether it has personal jurisdiction over him; it will not consider the actions of CMI for which there is no evidence or allegations that Leone was personally responsible–such as shipping the metals testing machine and sending the sales receipt for the machine to Connecticut.  Those actions by other CMI employees may be relevant to a personal jurisdiction analysis concerning CMI, but that entity is not before the Court.  Thus, looking at the allegations in a light most favorable to the plaintiff, the only conduct of Leone attributable to him for the purpose of jurisdictional analysis under the Connecticut long-arm statute is his participation in the two telephone calls of January 13, 2000.

     b.  Communications as "Transacting Business"

     "The term 'transacts business' . . . embraces a single business transaction. . . .  In determining whether the plaintiffs' cause of action arose from the defendants' transaction of business within the state [the Connecticut Supreme Court] do[es] not resort to a rigid formula.  Rather, [the Court] balance[s] considerations of public policy, common sense, and the chronology and geography of the relevant factors."  Jarrow Formulas v. Int'l Nutrition Co., 175 F. Supp. 296, 305 (D. Conn. 2001) (quoting Zartolas v. Nisenfeld, 184 Conn. 471, 440 A.2d 179, 181 (1981) (internal quotation marks omitted).  In Under Par, the Court held that single telephone transaction was sufficient to find jurisdiction under 59-52(b).  See Under Par, 47 Conn. Supp. at 328.  Here, the Court will assume, without deciding, that his participation in the two

telephone calls satisfied the requirements of the Connecticut long-arm statute as to Leone.[3]

### 2.  Committing a Tortious Act in Connecticut

Because the Court found that jurisdiction is proper under 59-52(b)(a)(1), it need not

address the plaintiffs' argument that jurisdiction would also be proper pursuant to 59-52(b)(a)(2).

### B.  Due Process

Having assumed that the relevant test of the Connecticut long-arm statute is met as to

Leone, the Court must now address whether exercising jurisdiction over him would comport with

the "minimum contacts" requirement of due process.  "Minimum contacts" are established when

a defendant "purposely avail[s] himself of the privileges and benefits" of the forum state.

Hanson v. Denckla, 357 U.S. 235, 253 (1958); see also United States Surgical Corp., 25 F. Supp.

2d at 44-45.  The purposeful availment requirement protects defendants from being haled into

court based on "random, fortuitous or attenuated contacts," Burger King Corp. v. Rudzewicz,

471 U.S. 462, 472 (1985), and assures that they have "fair warning" that their conduct could

subject them to suit in the forum state.  See Bensmiller v. E. I. DuPont de Nemours & Co., 47

F.3d 79, 85 (2d Cir. 1995) ("Such purposeful conduct provides a defendant with 'fair warning'

that he and his property may be subject to the exercise of that forum state's power.").  See also

World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980) (defendants subject to

jurisdiction only where their "conduct and connection with the forum [s]tate [is] such that [they]

should reasonably anticipate being haled into court there.").  This inquiry is tied to whether "the

---

[3]The Court need not decide this issue, given its holding that the exercise of jurisdiction would not comport with the requirements of due process under these circumstances.  See discussion below.

assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice.'" Amerbelle, 272 F. Supp. 2d at 196 (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

Leone's participation in two telephone calls on one day is not sufficient to satisfy the requirements of "minimal contacts" under the circumstances here. See Fox v. Boucher, 794 F.2d 34, 37 (2d Cir. 1986) ("It would offend 'minimum contacts' due process principles to force [the defendant], a Massachusetts resident, to litigate in a New York forum on the basis of one telephone call."); Heinfling v. Colapinto, 946 F.Supp. 260, 264 fn.2 (S.D.N.Y. 1996) ("Nor can the alleged single phone call [defendant] made to Plaintiff . . . provide the basis for long-arm jurisdiction over [defendant]. . . . Nor would such an exercise of jurisdiction be likely to satisfy a constitutional minimum contacts analysis."). Considering the "totality of the circumstances,"[4]–which include that the telephone negotiations between Leone and Grunberger were part of negotiations with all three plaintiffs, two of whom were in Illinois with Leone, and that the subject of the negotiation was the sale of a metals testing machine to be used not in Connecticut but in West Africa–the Court concludes that the two phone calls from Leone's office to Grunberger in Connecticut, and his participation in them, did not constitute a "connection with the forum [s]tate such that [Leone] should [have] reasonably anticipated being haled into court [in Connecticut]." World-Wide Volkswagen, 444 U.S. at 297.[5]

_____

[4]See Milne v. Catuogno Court Reporting Servs., Inc., 239 F. Supp. 2d 195, 203 (D. Conn. 2002) ("The minimum contacts inquiry rests upon the totality of the circumstances rather than any mechanical criteria . . .") (citation and internal quotation marks omitted).

[5]In reaching this conclusion, the Court departs from the reasoning in Under Par, in which the Court held, without analysis, that "[t]he plaintiff's demand for his [defendant's] presence in a Connecticut judicial forum is reasonable and consistent with notions of 'fair play and substantial

C. Remaining Arguments

_____Because the Court finds that this case should be dismissed based on lack of personal jurisdiction over the defendant, it need not address the defendant's remaining arguments under Fed.R.Civ.P. 9(b) and 12(b)(6).

**III.  Conclusion**

_____For the preceding reasons, the defendant's motion to dismiss is GRANTED.  The clerk is ordered to close the case.

SO ORDERED this 18th day of June 2004, at Hartford, Connecticut.

 **/s/ CFD**_____
**CHRISTOPHER F. DRONEY**
**UNITED STATES DISTRICT JUDGE**

justice.'" Under Par, 47 Conn. Supp. at 328.

-10-